Filed 10/10/25  P. v. Allen CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COLUMBUS ALLEN, JR., II,<br><br>    Defendant and Appellant. | F088623<br><br>(Super. Ct. No. 1222451)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Kellee C. Westbrook, Judge.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Columbus Allen, Jr., II, in propria persona, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Detjen, J. and Franson, J.

# INTRODUCTION

In 2006, California Highway Patrol (CHP) Officer Earl Scott was shot and killed during a traffic stop on Highway 99 in Stanislaus County. In 2007, appellant and defendant Columbus Allen, Jr., II (appellant) was charged in a grand jury indictment with committing the first degree premeditated murder of Scott with three special circumstances, along with other charges. The district attorney's office stated its intent to seek the death penalty.

In 2010, shortly before his jury trial was scheduled to begin, appellant pleaded guilty pursuant to a negotiated disposition to count 1, first degree premeditated murder, and count 2, felon in possession of a firearm, and admitted the three special circumstances and a prior prison term enhancement, for the indicated sentence of three years plus life in prison without the possibility of parole (LWOP), and a $5,000 restitution fine. As part of the negotiated disposition, appellant waived his appellate rights, personally read a statement to establish the factual basis for his pleas and admissions, and admitted he shot Scott with the intent to kill to avoid being arrested.

In 2024, the trial court recalled appellant's sentence pursuant to Penal Code[1] section 1172.75 because his aggregate determinate term included a now-invalid prior prison term enhancement, and counsel was appointed to represent him. Throughout the section 1172.75 proceedings, appellant filed motions, in propria persona, for the trial court to vacate his plea and strike his LWOP sentence. The court conducted a full resentencing hearing, and dismissed the one-year prior prison term enhancement and the two-year sentence for count 2, felon in possession of a firearm. The court rejected appellant's motions to vacate his plea, admissions, and the LWOP sentence, and resentenced him to the mandatory indeterminate LWOP term for first degree murder with special circumstances.

---

[1] All further statutory citations are to the Penal Code.

On appeal, appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant filed a lengthy supplemental letter brief and primarily challenges the validity of his murder plea, his admissions to the special circumstances, and the LWOP sentence. He also raises issues about the trial court's rulings at the section 1172.75 hearing. We affirm.

## PROCEDURAL BACKGROUND

On June 13, 2007, a grand jury convened in the Stanislaus County Superior Court and returned an indictment alleging appellant (born 1975) committed count 1, first degree premeditated murder of Scott on or about February 17, 2006 (§ 187), with three special circumstances: he committed the murder to avoid lawful arrest (§ 190.2, subd. (a)(5)), the victim was a police officer engaged in his duties (§ 190.2, subd. (a)(7)), and the murder was intentional and committed by means of discharging a firearm from a vehicle with intent to kill (§ 190.2, subd. (a)(21)); count 2, felon in possession of a firearm (former § 12021, subd. (a), renumbered § 29800, subd. (a)(1)); and one prior prison term enhancement (§ 667.5, subd. (b)). Appellant pleaded not guilty and denied the special allegations.

During the lengthy pretrial proceedings, a change of venue motion was granted and the matter transferred to the Sacramento County Superior Court, with Judge Patrick Marlette to preside over the jury trial set to begin in July 2010. The prosecution stated its intent to seek the death penalty.

## THE PLEA AND SENTENCING PROCEEDINGS

On July 26, 2010, this court filed an order staying all proceedings in appellant's case. On July 30, 2010, this court lifted the stay in order for Judge Marlette to conduct a plea and sentencing hearing. (*Allen v. Superior Court* (Aug. 5, 2010, F060533) [nonpub. order].)

3.

On August 2, 2010, Judge Scott Steffen convened a hearing in Stanislaus County Superior Court in appellant's case to determine if the parties had reached a negotiated disposition. Appellant was present and represented by his two trial attorneys, John Grele and Martin Sabelli.

**The Pre-plea Hearing**

Judge Steffen began with a pre-plea hearing, conducted in camera, to address the terms of the plea agreement. The court stated the hearing would be part of the record of appellant's eventual plea. Defense counsel agreed the in-camera hearing would be temporarily sealed only until appellant entered his plea that same day. The parties acknowledged the Fifth District Court of Appeal lifted the stay of the proceedings to conduct the plea and sentencing hearing, and they stipulated that Judge Steffen could take appellant's plea in Stanislaus County Superior Court.

The prosecutor stated the parties agreed to the following negotiated disposition: appellant would plead guilty to both counts, admit all three special circumstances and the prior prison term enhancement, and he would be sentenced to three years plus LWOP; appellant would waive his right to preparation of a full presentence report prior to the sentencing hearing; appellant would waive his appellate rights; the court would calculate his credits; the court would hear victim impact statements from Scott's parents and two friends before imposing sentence; the victim's family were not requesting direct victim restitution; and appellant would be ordered to pay a restitution fine of $5,000 to the restitution fund.

Defense counsel objected to imposition of the $5,000 restitution fine. Appellant personally addressed the court and said he wanted an order that limited how much the Department of Corrections and Rehabilitation (CDCR) could deduct from his prison account each month so he could send some funds to his family. After a lengthy discussion between the trial court, the prosecutor, defense counsel, and appellant, the parties agreed the court would impose the restitution fine of $5,000, and not the

4.

maximum fine of $10,000, with the recommendation for CDCR to take a maximum deduction rate of 20 percent.

The prosecutor stated another term of the plea agreement was that appellant would make an allocution and a statement regarding the facts of the case and what occurred. "We have offered a fairly minimized statement, but that will also serve as a factual basis for the case." The prosecutor offered to provide legal authority but the trial court declined and stated it was aware of the case law for a factual basis.

The trial court asked defense counsel if he reviewed the proposed factual basis statement and if it was true and accurate; counsel said yes. The court asked appellant if he read and understood the statement, and appellant said yes.[2]

The trial court asked appellant if he understood that he was waiving his appellate rights, which meant he could not challenge the pretrial and plea proceedings or raise ineffective assistance challenges. Appellant said he understood. The court was aware appellant had repeatedly attempted to replace his two attorneys.

> "THE COURT: I don't want to get into any discussions that you had with [defense counsel], things you told him or things he told you. Okay?

---

[2] As will be addressed in issue II below, appellant filed a supplemental letter brief in this appeal, and raised numerous contentions about the validity of his plea, even though such issues are not cognizable in this appeal from the trial court's ruling in the section 1172.75 proceedings. We note, however, that the record herein refutes appellant's claim in his supplemental letter brief that the trial court at the plea hearing misled him to believe the law "required capital defendants to read in open court a statement prepared" by the district attorney, the statement was "full of errors," and it was purportedly "refuted by factual & physical evidence."

In order for a court to accept a plea, "it must garner information regarding the factual basis for the plea from either defendant or defense counsel …." (*People v. Holmes* (2004) 32 Cal.4th 432, 436.) The trial court herein never stated that appellant was legally required to personally recite the factual basis statement. Instead, one of the terms of the negotiated disposition was that appellant would personally state the factual basis and admit he intentionally killed Scott to avoid arrest, and also admit the facts of the other charges. Defense counsel concurred with the accuracy of the factual statement, and appellant said he understood and agreed to read it.

But I do want to be clear that—and I'm going to go through some specific instances. When I'm through, I want to be satisfied that you believe you've been adequately represented and I want you to tell me that. And if there are any issues, I want you to address those. Okay?

"[APPELLANT]: So basically getting to the point that I'm waiving my right to raise ineffective assistance of counsel on habeas.

"THE COURT: That is where I'm going.

"[APPELLANT]: That is fine."

Appellant again asked if he was waiving his right to file a habeas petition for ineffective assistance. The court replied: "That is what I'm getting at. I just want to make sure that you fully understand the scope of that waiver, so that we don't see a habeas petition down the road where you say, well, I knew about these things, but I didn't know about that one."

The trial court asked appellant whether he believed he was adequately represented by his attorneys to date; appellant said yes. The court asked if he was adequately represented by his attorneys regarding the following phases of the proceedings: the grand jury indictment, the section 995 motion to dismiss, the section 1538.5 motion to suppress, the change of venue motion, the order to move the case to Sacramento County, the pretrial motions and writs, and a peremptory challenge to remove Judge Marlette. In response to each of the court's questions, appellant said yes, that his attorneys had adequately and effectively represented him.

As to the plea, the trial court asked appellant if he had sufficient time to talk to his attorneys about the facts and circumstances of his case, possible defenses, the consequences of his plea, and all potential ramifications of his plea. Appellant said yes. The court asked if he believed their advice had been sound, even if he disagreed with some of the things they told him. Appellant said yes. The court asked appellant if there were any issues with respect to the manner in which his attorneys had represented him that would affect his ability to enter into the plea agreement freely, knowingly, and

6.

voluntarily.  Appellant said no.  Defense counsel concurred with each of appellant's responses.

Finally, the trial court asked appellant if he had any questions or issues he wanted to raise before he entered his plea.  Appellant said no.

**Plea Hearing**

After a recess, Judge Steffen resumed the proceedings in open court and conducted the change of plea hearing.

The prosecutor and defense counsel stipulated that appellant would plead guilty to both counts, and admit the three special circumstances and the prior prison term enhancement; he would be sentenced to three years plus the indeterminate LWOP term; the court would impose a restitution fine of $5,000, and recommend that the restitution fine would be recovered at a maximum rate of 20 percent; appellant would personally state the factual basis for his pleas and admissions; he waived his appellate rights; the victim's family and friends would have the opportunity to speak at the sentencing hearing; and the victim's family were not requesting direct victim restitution.  The prosecutor stated he discussed the plea agreement with the victim's family, and they agreed with it to bring finality to the proceedings.

Appellant personally read the following statement as the factual basis for his pleas and admissions:

> " 'On February 17, 2006, I was stopped by CHP Officer Earl Scott while I was driving north on Highway 99 in Stanislaus County.  I had a firearm in the car with me.  In order to avoid arrest, I shot Officer Scott with the intent to kill him.  When I shot Officer Scott, I was in my car and he was standing outside of the car.  At the time I shot Officer Scott, I knew that he was in the performance of his duties as a peace officer.
>
> " 'As to Count II, I have previously been convicted in Alameda County of violation of Vehicle Code Section 10851, auto theft, a felony.  I have also been convicted in Alameda County of violation of Health and Safety Code Section 11352, possession of controlled substance for the purpose of sale, a felony.

7.

" 'After being convicted for those felonies, I was in possession of a firearm on February 17th, 2006.

" 'For the prior conviction of Vehicle Code Section 10851, I was sentenced to [CDCR]. And on February 17th, 2006, I had not been free of prison custody for more than five years."

The court fully advised appellant about each of his constitutional rights, and the nature and consequences of his pleas and admissions. Appellant stated he understood and waived each of his rights.

Thereafter, appellant pleaded guilty to count 1, first degree premeditated murder of Scott, and admitted three special circumstances: he committed the murder to avoid lawful arrest, the victim was a police officer engaged in his duties, and the murder was intentional and committed by means of discharging a firearm from a vehicle with intent to kill. He also pleaded guilty to count 2, felon in possession of a firearm, and admitted the prior prison term enhancement.

**Sentencing**

The trial court asked appellant if he wanted to be sentenced that same day "without a formal pre-sentence probation report." Appellant said yes. The court asked if appellant waived time for sentencing, and defense counsel said yes.[3]

The trial court asked the prosecutor if the victim's family wanted to make a statement. The prosecutor called on Scott's father, who was present in the courtroom but declined to make a statement. The prosecutor called on two CHP officers, who spoke on behalf of themselves and other officers, and expressed their grief and the impact of appellant's death on their lives. The prosecutor read a statement from Scott's mother, who stated she had declined to attend the court hearings because she wished to keep the

---

[3]    In one of his plea arguments in his supplemental letter brief, appellant asserts he "acquiesced" to the trial court's allegedly "ambiguous" request to waive "unspecified 'irregularities' & appeal rights" at the plea hearing. While these issues are not cognizable in this appeal, the record clearly refutes this claim given the court's specific and express advisements at the plea hearing.

8.

image of her son in her mind and not that of appellant, and thanked the district attorney's office for their pursuit of justice.

The trial court denied probation based on the nature of the offenses and parties' negotiated disposition, and sentenced appellant to the midterm of two years for count 2, felon in possession of a firearm, plus one year for the prior prison term enhancement, for an aggregate determinate sentence of three years; and a consecutive indeterminate LWOP term for count 1, first degree premediated murder with three special circumstances. The court imposed a restitution fine of $5,000 (§ 1202.4, subd. (b)) with a maximum deduction rate of 20 percent, and other fines and fees; and stated there would be no restitution paid to the victim's family (§ 1202.4, subd. (f)).[4]

---

[4] Another of appellant's arguments in his supplemental letter brief is that the victim's family never waived restitution, restitution was mandatory, and his plea and sentence are invalid. Again, these plea issues are not cognizable in this appeal but the record refutes his claims. The Penal Code recognizes "two kinds of restitution: (1) restitution fines (§ 1202.4, subd. (b)), which are not directly related to the amount of loss sustained by a victim, and (2) direct restitution to the victim (§ 1202.4, subd. (f)), which is based on the amount of the loss the victim actually sustained. The purposes of the two kinds of restitution are different. The imposition of a restitution fine is punishment. [Citation.] The purpose of direct victim restitution, however, is to reimburse the victim for economic losses caused by the defendant's criminal conduct, i.e., to make the victim reasonably whole." (*People v. Holman* (2013) 214 Cal.App.4th 1438, 1451–1452; *People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1132.)

Restitution fines imposed under section 1202.4, subdivision (b) "are not paid directly to the victims of crime. Rather, they are deposited to the Restitution Fund." (*People v. Holman, supra*, 214 Cal.App.4th at p. 1452.) At the time of appellant's convictions and sentencing hearing in 2010, section 1202.4, subdivision (b) stated the court had discretion to impose a restitution fine between the range of $200 to $10,000, commensurate with the seriousness of the offense, and the trial court properly imposed the $5,000 restitution fine. (See, e.g., *People v. Woods* (2010) 191 Cal.App.4th 269, 272.)

As for direct restitution under section 1202.4, subdivision (f), "[t]he victims' right to restitution is a constitutional one, and just as it cannot be bargained away or limited by the prosecution, nor can the prosecution waive the victims' right to restitution. [Citations.] Indeed, on the motion of a victim, a court may at any time correct a sentence that is rendered invalid due to the omission of a restitution order. [Citation.] Nor may a trial court generally stray from the statutory mandate of 'full restitution.'" (*People v.*

9.

The trial court asked the probation officer for appellant's credits. He stated that appellant had 1,095 actual days for count 2, and 533 actual days for count 1, for a total of 1,628 days, with zero custody credits.[5]

**The Probation Report**

Finally, the trial court advised the probation officer that a presentence report was needed under section 1203.1. The prosecutor stated that appellant had waived preparation of a probation report. The court replied: "It's a presentence report. CDC[R] requires the … report.… It goes together with the Abstract when he is transported to CDC[R]." The prosecutor agreed that it would be prepared, and the court adjourned the proceedings.[6]

---

*Pierce* (2015) 234 Cal.App.4th 1334, 1337–1338; *People v. Valdez* (1994) 24 Cal.App.4th 1194, 1202–1204.)

In this case, the prosecutor did not "bargain away" the rights of Scott's family to obtain direct victim restitution. Instead, there is no evidence the family filed any claims for direct restitution that were subsequently waived by the prosecution, especially given the presence of Scott's father at the plea and sentencing hearing when the court stated there would be no order for direct restitution. (See, e.g., *People v. Valdez, supra*, 24 Cal.App.4th at pp. 1197–1198 [direct restitution to the victim was not ordered despite evidence of economic loss].)

[5] In appellant's motions filed in propria persona during the section 1172.75 proceedings in 2024, he asserted the abstract of judgment was invalid because it erroneously stated his credits. On May 16, 2014, the trial court filed an amended abstract of judgment that corrected appellant's presentence custody credits.

[6] The court was correct about CDCR and the report, but erroneously cited section 1203.1, which addresses suspension of sentence and granting of probation. Instead, section 1203c, subdivision (a)(1) states: "Notwithstanding any other law, whenever a person is committed to an institution under the jurisdiction of [CDCR], whether probation has been applied for or not, or granted and revoked, it shall be the duty of the probation officer of the county from which the person is committed to send to [CDCR] a report of the circumstances surrounding the offense and the prior record and history of the defendant, as may be required by the Secretary of [CDCR]." (See also § 1203, subd. (b)(4); Cal. Code Regs., tit. 15, §§ 3375, 3375.1, 3375.3.)

10.

The clerk's transcript in this appeal contains a three-page presentence report, dated August 2, 2010. It stated appellant's name and birth date (born 1975), the dates when the crimes were committed and appellant was booked, the charges of the grand jury indictment, and his pleas and sentence pursuant to the plea agreement.

The report contained a one-paragraph summary of the facts obtained from the district attorney's office:

> "On February 17, 2006, California Highway Patrol (CHP) Officer Earl Scott stopped [appellant] for speeding while traveling north on Highway 99, near Salida, in the County of Stanislaus. During the traffic stop, [appellant] shot the victim officer with a .38 caliber firearm, while [appellant] was in his car as the officer was standing outside the passenger window of [appellant's] car. The gunshot wound was fatal. [Appellant] was driving on a suspended license, had suffered previous felony convictions and was in possession of a firearm. [Appellant] fled the scene, and was subsequently arrested when he went to the Stockton Police Department to report his car as having been stolen."[7]

The report listed appellant's prior convictions in from 1996 to 2003. The report concluded that appellant was not interviewed "[a]s part of the agreement between the parties." The district attorney notified the victim's family about the sentencing proceedings, and a victim impact statement was read during the sentencing hearing.[8]

---

[7] At the sentencing hearing, CHP Officer Brendan Moore made a victim impact statement as one of Scott's friends, and said Scott conducted a traffic stop of appellant, appellant murdered Scott because he did not want to get arrested and left Scott on the side of the freeway, but Scott "was not about to let [him] get away" because he held onto the registration papers for appellant's vehicle "which ultimately [led to his] arrest."

[8] In issue IV, we will address appellant's contentions in his supplemental letter brief that a presentence report should have been prepared prior to the August 2, 2010, sentencing hearing, the probation report filed after the sentencing hearing was inadequate and contained errors, the trial court should have ordered a supplemental probation report before conducting the section 1172.75 resentencing hearing because of the errors in the 2010 report, and his defense counsel was prejudicially ineffective for failing to move for a supplemental probation report. Appellant filed the 2010 probation report in support of his various trial court motions, and the report is not under seal but included in the clerk's transcript in this appeal. Given appellant's contentions about the adequacy of the 2010

11.

## SECTION 1172.75 PROCEEDINGS

On December 15, 2023, the Stanislaus County Superior Court filed an order stating appellant's case was reassigned to Judge Kellee Westbrook for all purposes. The public defender's office was appointed to represent appellant.[9]

**Appellant's Motions**

On February 14, 2024, appellant, acting in propria persona, filed documents in the trial court regarding the section 1172.75 proceedings, and made a peremptory challenge to remove Judge Westbrook; moved to discharge the public defender and for appointment of another attorney; alleged he was subject to physical assaults in prison; and moved for preparation of a probation report to assist the court when it conducted his full resentencing hearing so it could reduce the entirety of his sentence.[10]

On February 20, 2024, appellant, again acting in propria person, filed a statement in mitigation and points and authorities, and asserted his plea agreement was voidable and he was entitled to full resentencing of his LWOP term based on the Magna Carta, the Mayflower Compact, and the Declaration of Independence, and alleged he was improperly removed from his parents' custody as a child and he was mistreated in prison.

---

probation report, and how it relates to the court's orders at the 2024 resentencing hearing, we have cited certain sections of the 2010 report.

[9] On December 5, 2022, appellant filed a petition for writ of habeas corpus in the trial court, and asserted he was entitled to recall and resentencing pursuant to section 1172.75 to strike the prior prison term enhancement, and he had a right to a full resentencing hearing where the court could address the validity of his convictions because the plea agreement and LWOP term were coerced and "voidable." On January 5, 2023, the court denied the petition because only CDCR could initiate recall proceedings, and appellant's challenges to his plea and LWOP sentence were not cognizable because he could have raised these issues on appeal but waived his appellate rights as part of his plea, and he previously raised the same issues in prior writ petitions which were denied.

[10] Appellant's motion included a partial copy of the transcript from his August 2, 2010, plea hearing, and a complete copy of the probation report ordered by the court after the sentencing hearing.

12.

Appellant also raised allegations about the August 2, 2010, plea and sentencing hearing, and claimed he was coerced to read the factual statement for the plea; his attorney would not let him read a different statement that appellant composed; his own statement would have contradicted the People's claimed factual basis; the restitution fine was improperly imposed over his objections; the trial court failed to order a probation report before sentencing; the report prepared after his sentencing hearing only summarized his criminal record and did not address any recommendations for probation or punishment; and his credits were calculated incorrectly.

Appellant further asserted his initial arrest was unlawful; there was no evidence that he shot Scott; there was no gunshot residue found inside or outside his vehicle; the abstract of judgment was invalid because of the erroneous calculation of credits; and the trial court lacked jurisdiction to impose a restitution fine on a person sentenced to LWOP.[11] Appellant filed additional documents regarding his prison grievances and rules violations.

**Initial Hearing**

On February 21, 2024, Judge Westbrook convened a hearing in the section 1172.75 recall and resentencing proceedings. Appellant appeared by video conference and Karen Kelly, his deputy public defender, was in the courtroom.

Judge Westbrook denied appellant's recusal motion as untimely since the notice of her assignment to appellant's case was sent on December 15, 2023. Appellant personally addressed the trial court and stated the notice was not clear because it did not state the nature of the assignment. The court replied the notice stated the assignment was for "all

---

[11]  When a defendant is sentenced to LWOP, the trial court cannot impose a section 1202.45 parole revocation fine since that defendant will never be eligible for parole. (*People v. McInnis* (2021) 63 Cal.App.5th 853, 866–867.) There is no such limitation for a section 1202.4, subdivision (b) restitution fine when a defendant is sentenced to LWOP.

purposes" and was as clear as it could possibly be.  Appellant said it was "real broad and vague."  The court explained that Judge Steffen, who took appellant's plea, had retired, and the case was reassigned to the first judge on the rotation, and again denied the recusal motion as untimely.

The trial court next addressed appellant's motion to discharge the public defender, and conducted a confidential hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118.

### ***Appellant's First Marsden Hearing*[12]**

Appellant said Kelly should be discharged because she was not representing his interests and never communicated with him, and he did not know why this hearing was scheduled.  She allegedly asked him to waive his presence at this hearing but he had the right to appear, and "we haven't had any type of discussion about presenting evidence or a rehabilitation program or anything."

Kelly said there were no conflicts that prevented her from representing appellant and she was ready to proceed.  She had been communicating with appellant since March 2023, and sent several letters to him about the resentencing proceedings.  She also spoke to appellant on the telephone, and talked to his most recent prior attorney.  Kelly explained to appellant that the trial court had limited discretion to resentence him at the section 1172.75 hearing since he was sentenced to the LWOP term, but she would argue that the court could impose a concurrent term for count 2 and reduce the restitution fine.

Appellant asked to represent himself because the public defender's office was going to represent witnesses at his trial.  Appellant launched into a discussion of all the pretrial motions and hearings, claimed he was coerced into reading the factual basis

---

**12**     In issue VI, we will address appellant's contentions in his supplemental letter brief about the trial court's denials of his two *Marsden* motions and the alleged ineffective assistance of his deputy public defender who represented him in the section 1172.75 proceedings.  When a defendant raises a *Marsden* issue or an issue related to *Marsden* on appeal, the previously sealed transcript of the in camera hearing is subject to disclosure. (Cal. Rules of Court, rule 8.47; *People v. Knight* (2015) 239 Cal.App.4th 1, 7–8.)

statement at the plea hearing, and the plea was invalid. Kelly stated that appellant wanted to "bootstrap" the validity of his plea into the section 1172.75 resentencing proceedings, and he also wanted to represent himself.

The trial court did not find any conflict and denied appellant's *Marsden* motion.

### *Resumption of Proceedings in Open Court*

The trial court resumed proceedings in open court and stated appellant's *Marsden* motion was denied. The court asked appellant if he wanted a hearing to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806, and appellant said yes. Appellant also moved for preparation of an updated probation report because he was entitled to a full resentencing hearing.

Since appellant appeared at the hearing by video conference, the court decided to continue the matter to transmit the appropriate *Faretta* advisement and waiver forms to appellant in prison.[13]

## Appellant's Habeas Petition

On March 5, 2024, appellant, acting in propria persona, filed a petition for writ of habeas corpus in the trial court, and claimed that at the February 21, 2024, hearing his constitutional rights were violated because the court failed to recuse itself, failed to grant his *Marsden* motion, denied his motion for preparation of an updated probation report for the resentencing hearing, failed to strike the restitution fine, and failed to fix his parole date. He did not raise any *Faretta* issues. The trial court denied the petition.

## Appellant's Motion for a Restraining Order

On May 10, 2024, appellant, again acting in propria persona, filed a motion in the trial court for a preliminary injunction and temporary restraining order against CDCR. Appellant alleged the litigation coordinator at California State Prison Solano improperly disclosed the entirety of his CDCR records and personal information to the district

---

[13] Appellant's contentions about his *Faretta* motion will be addressed in issue V.

15.

attorney without his consent.  In support of his motion, appellant attached copies of documents from CDCR advising him that it had received a subpoena for his records.[14]

## The Trial Court's Initial Order for a Supplemental Probation Report

On June 10, 2024, the trial court convened a hearing in the section 1172.75 proceedings.  Appellant appeared by video conference and defense counsel was in the courtroom.

The prosecutor stated the trial court was required to strike the prior prison term enhancement, it had discretion to resentence on count 2, felon in possession, and the People would agree that the court could run the two-year sentence concurrent with the LWOP term.  The prosecutor stated the court did not have any additional sentencing discretion.

Appellant addressed the trial court and complained the People subpoenaed his records from CDCR in violation of his right to privacy, and the court had to order an updated probation report for the resentencing hearing.

The trial court asked the prosecutor whether there should be a supplemental probation report.  The prosecutor said the court had discretion to order a supplemental report given the passage of time.

Appellant interrupted and moved to discharge his deputy public defender.  Kelly stated appellant was trying to use the section 1172.75 resentencing hearing to withdraw his plea and strike the LWOP term, and she told him the trial court only had discretion to resentence on count 2 and the LWOP sentence was mandatory because of the special circumstances.

The trial court ordered preparation of a supplemental probation report for the resentencing hearing.  The court then asked appellant if he wanted to represent himself. Appellant did not renew his *Faretta* request, but instead asked the court to order the

---

[14]     CDCR records are discoverable by subpoena duces tecum.  (*Shorts v. Superior Court* (2018) 24 Cal.App.5th 709, 726, fn. 11.)

Fifth District Court of Appeal and the Supreme Court to send his legal mail to the prison. The court stated it could not order the higher courts to do anything, and again asked if appellant wanted to represent himself. Appellant asked for another *Marsden* hearing and appointment of another attorney. The court continued the *Marsden* hearing to another date.

**The People's Objections to a Supplemental Probation Report**

On June 12, 2024, the People filed a motion for the trial court to reconsider its order for a supplemental probation report, and argued such a report was discretionary since appellant had to be sentenced to a mandatory LWOP term.

The People stated that at appellant's plea hearing in 2010 he waived preparation of a presentence report as part of the negotiated disposition, and appellant personally stated the factual basis for the plea and admitted he intentionally killed Scott. The People argued the court should rely on appellant's factual basis statement at the plea hearing to conduct the resentencing.

The People argued the trial court could order a limited supplemental probation report that only addressed appellant's postconviction conduct in CDCR, any statements he wished to make, and statements from the victim's family and friends. The People provided the probation department with over 2,900 pages of appellant's prison records subpoenaed from CDCR, and stated a continuance was necessary for preparation of even a limited report.

On June 28, 2024, appellant, again acting in propria persona, filed objections to the People's motion to limit the scope of the supplemental probation report, and argued the People could not rely on his factual basis statement at the plea hearing because it was coerced, he never waived a presentence report, the 2010 probation report contained errors and he was not interviewed for it, his records from CDCR were obtained in violation of his right to privacy, and the victim's family and friends already spoke at his sentencing

hearing in 2010 and they should not be allowed to give statements again.[15]  Appellant concluded that these factors required withdrawal of his guilty plea.

## THE RECALL AND RESENTENCING HEARING

On July 2, 2024, the court convened the second *Marsden* hearing and also conducted the resentencing hearing.

### *Second Marsden Hearing*

Appellant complained Kelly was not prepared to represent him because she never asked for a supplemental probation report and did not realize a limited probation report was filed at the time of his plea hearing.  The trial court said probation reports were not usually prepared in plea cases, so it was reasonable for Kelly to reach that conclusion.

Appellant complained Kelly was not planning to object to the People's motion to limit the supplemental probation report, she had not done anything for his case, and he had to file all the motions.

The trial court stated it reviewed the motions that appellant filed in propria persona, and asked if he believed the court could further reduce his sentence beyond dismissing the prior prison term enhancement.  Appellant said the statute required the court to conduct a full resentencing hearing, including his LWOP term, and Kelly was ineffective because she refused to make this argument.

Kelly stated the reporter's transcript of the plea hearing showed that appellant waived his right to a presentence report as part of the negotiated disposition, and she knew a "perfunctory" probation report was filed after the sentencing hearing.  Kelly stated appellant wanted a supplemental probation report prepared because he intended to use the section 1172.75 resentencing hearing to invalidate his plea and the LWOP term.  She explained to him that the trial court did not have jurisdiction or statutory authority to

---

[15]    A crime victim and/or his or her family may exercise the right to address the court during postjudgment resentencing proceedings.  (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 265.)

18.

invalidate the plea and LWOP sentence at the resentencing hearing. Kelly stated appellant had filed writ petitions in federal court to withdraw his plea based on his theory that "there wasn't a sufficient record of his trial proceedings" so that the court could not conduct a resentencing hearing and had to invalidate his plea. However, she did not file a motion to withdraw his plea as part of the section 1172.75 hearing because it was not legally authorized.[16]

Appellant disputed Kelly's statements and claimed they never talked about these issues. Appellant stated the original probation report omitted required information, and the trial court was required to order a complete report for the resentencing hearing. The court denied appellant's second *Marsden* motion.

**Recall and Resentencing Hearing**

The trial court resumed the hearing in open court, stated it had denied the *Marsden* motion, and it was going to conduct the section 1172.75 recall and resentencing hearing.

The trial court stated that it would strike the one-year prior prison term enhancement, and invited argument on whether it should dismiss count 2, felon in possession, and the two-year sentence. The prosecutor did not object.

Appellant interrupted and again said he never waived preparation of the probation report at the plea hearing on August 2, 2010. The trial court read aloud the plea transcript to appellant, where he was asked if he wanted to be sentenced that same day " 'without a formal presentencing report, probation report' " and appellant said yes. Appellant replied he did not understand what he was waiving. The court rejected appellant's claim.

The trial court found that a supplemental probation report was not required for the resentencing hearing because the People were not going to object to the court's proposed

---

[16] An attorney is not ineffective for declining to file meritless or frivolous motions. (*People v. Lucero* (2000) 23 Cal.4th 692, 732 (*Lucero*).)

dismissal of count 2 and the two-year term. The court did not see "the utility in ordering Probation to go over everything they already did when they did the last report."

Appellant said he did not understand if the prior prison term enhancement was being stricken from count 1 or count 2. The trial court said it was being stricken for all purposes. Appellant said there were errors "in all of these records" from his plea hearing, including the minute orders and reporter's transcripts. The court said there were no errors in the record, and it was going to dismiss the parts of the sentence that it had discretion over, without having to consult a supplemental probation report.

Kelly moved to reduce all fines to the mandatory minimum amounts. Appellant interrupted and stated all fines had already been paid, and the trial court accepted his representation. Appellant added Kelly was ineffective because she did not know the fines had been paid. The court rejected his argument.

The trial court resentenced appellant and dismissed the aggregate determinate sentence consisting of the one-year prior prison term enhancement, and his conviction and sentence in count 2 for felon in possession and the two-year term. The court found it did not have discretion to further reduce appellant's sentence, and resentenced him to the LWOP term for count 1, first degree premeditated murder with three special circumstances.

Appellant again said the trial court could not resentence him without a supplemental probation report. The court replied:

> "I have given you everything I can possibly give you. No probation report saying you were a saint would change that. I gave you the best that can be given. No probation report will change that. Requiring Probation to write a report when I'm giving you everything possible is an absolute waste of judicial resources. There is absolutely no point whatsoever now that the district attorney has agreed to strike everything possible in your case."

20.

**Notice of Appeal**

On September 5, 2024, appellant filed, in propria persona, a notice of appeal, and requested a certificate of probable cause and claimed the trial court and defense counsel were not ethical or impartial; the court should have ordered a supplemental probation report; the plea agreement "denied" any victim restitution; the court did not have jurisdiction to take his plea in 2010; his plea was involuntary; and his plea had to be vacated because there was no probable cause for his arrest.

On the same day, the trial court denied the certificate of probable cause as to the "judgment on 8/2/2010."[17]

## DISCUSSION

As noted above, appellate counsel filed a *Wende* brief with this court. The brief also includes counsel's declaration that appellant was advised he could file his own brief with this court. This court advised appellant by letter that he could file a supplemental letter or brief raising any arguable issues.

On July 22, 2025, appellant filed a supplemental letter brief raising issues regarding his plea and sentence, and also about the section 1172.75 proceedings.

**I. Section 1172.75**

We begin with the trial court's jurisdiction to recall appellant's sentence. "Before 2020, the Penal Code instructed criminal sentencing courts to 'impose a one-year term for each prior separate prison term or county jail term' the defendant had previously served for a felony. [Citations.] Effective January 1, 2020, the Legislature eliminated these one-year prior-prison-term enhancements except in cases involving prior terms for sexually violent offenses. [Citation.] Two years later, the Legislature made the change

---

[17] On or about January 13, 2025, appellate counsel sent a letter to the trial court pursuant to section 1237.2 and *People v. Fares* (1993) 16 Cal.App.4th 954, and requested calculation of his credits pursuant to *People v. Buckhalter* (2001) 26 Cal.4th 20, 37. On January 24, 2025, the court filed an amended abstract of judgment that corrected appellant's credits.

21.

retroactive. [Citation.] In … section 1172.75, the Legislature declared that, aside from enhancements imposed for sexually violent offenses, '[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to' … section 667.5, subdivision (b) 'is legally invalid.' [Citation.] In the same provision, the Legislature established a mechanism for resentencing individuals 'currently serving a term for a judgment that includes' such an enhancement." (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1053–1054.)

"[S]ection 1172.75 does not authorize a defendant to seek resentencing on his or her own motion or petition. Rather the process is triggered by [CDCR] identifying a defendant as a person serving a sentence that includes a prior prison term enhancement. (See § 1172.75, subd. (a).)" (*People v. Cota* (2023) 97 Cal.App.5th 318, 332.)

"Subdivision (b) of section 1172.75 directs the Secretary of [CDCR] and the correctional administrator of each county to 'identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a) and … provide the name of each person … to the sentencing court that imposed the enhancement.' " (*People v. Burgess* (2022) 86 Cal.App.5th 375, 380.) "After the trial court receives from … CDCR and county correctional administrator the information included in subdivision (b) of section 1172.75, 'the court shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a),' and if so, 'recall the sentence and resentence the defendant.' " (*Ibid*.; § 1172.75, subd. (c)(2).)

"Section 1172.75 requires the sentencing court to resentence defendants whose prior sentences include enhancements that are no longer valid or that now provide the court with new discretion to strike them." (*People v. Newell* (2023) 93 Cal.App.5th 265, 268.) "By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.) "The court shall apply the sentencing rules of the Judicial

Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).)

"The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

"[A]bsent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1029–1030; § 1385.)

Section 1172.75, subdivision (d) "vests the superior court with broad discretion based on an inherently factual inquiry" in resentencing a defendant, and we review the resentencing order for an abuse of that discretion. (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856–857.) However, the determination of whether the court has jurisdiction in a postjudgment proceeding to resentence on any part of the defendant's sentence is a question of law that is reviewed de novo. (*People v. Lewis* (2021) 11 Cal.5th 952, 961; *People v. Jimenez* (2020) 9 Cal.5th 53, 61.)

23.

## II.  Appellant's Contentions About His Plea and LWOP Sentence

In appellant's supplemental letter brief, he raises the following issues challenging the trial court's rulings and the representation provided by his defense attorneys leading up to his pleas, admissions, and imposition of the LWOP sentence:  he was detained and arrested without a warrant or probable cause; the preliminary hearing was repeatedly delayed over his objection; there were irregularities in the grand jury proceedings and indictment; the district attorney failed to fully disclose the grand jury transcripts; defense counsel was ineffective because he coerced appellant into accepting the plea bargain by claiming it would save him from the death penalty, but the real reason was his attorney did not want to go to trial since it would keep him away from his family; defense counsel intentionally misled him into believing that he had to read the factual basis statement as part of the plea; appellant was not interviewed for a presentence report; the presentence report was "full of errors"; he should have received a certificate of probable cause in this appeal so he could raise issues about his convictions and sentence; and the grand jury transcripts were erroneously excluded from the instant appellate record.

These issues are not cognizable in this appeal.  The initiation of recall and resentencing proceedings under section 1172.75 does not confer on a criminal defendant a new opportunity to raise alleged errors from his trial or proceedings leading to his plea and sentencing.  (See, e.g., *People v. Farfan* (2021) 71 Cal.App.5th 942, 947; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438; *People v. Senior* (1995) 33 Cal.App.4th 531, 535.)

Moreover, a guilty plea " 'constitutes an admission of every element of the offense charged and constitutes a conclusive admission of guilt.  [Citation.]  It waives a trial and obviates the need for the prosecution to come forward with any evidence.  [Citations.]  A guilty plea thus concedes that the prosecution possesses legally admissible evidence sufficient to prove [a] defendant's guilt beyond a reasonable doubt.  Accordingly, a plea of guilty waives any right to raise questions regarding the evidence, including its

sufficiency or admissibility, and this is true whether or not the subsequent claim of evidentiary error is founded on constitutional violations. [Citation.] By pleading guilty a defendant "waive[s] any right to question how evidence had been obtained just as fully and effectively as he waive[s] any right to have his conviction reviewed on the merits." [Citation.]' " (*People v. Cisneros-Ramirez* (2018) 29 Cal.App.5th 393, 405.)

As illustrated above, appellant repeatedly tried to use the section 1172.75 proceedings to vacate his pleas and admissions and strike his LWOP sentence. While these issues are not cognizable in this appeal, the limited record herein refutes many of appellant's contentions about what happened at his plea and sentencing hearing. The record also shows appellant's numerous habeas petitions challenging his pleas, admissions, and LWOP sentence have been repeatedly denied.[18]

### III. The Court's Discretion at the Section 1172.75 Resentencing Hearing

Appellant also raises several issues about the section 1172.75 proceedings. He argues that he was entitled to a full resentencing hearing because the section 667.5, subdivision (b) prior prison term enhancement was "material to the base term" of LWOP imposed for first degree premeditated murder, and the trial court should have stricken the LWOP term.

As explained in issue I above, section 1172.75 requires a full resentencing hearing, and "[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to

---

[18] In issue VII, we will address appellant's argument in his supplemental letter brief that this court improperly denied his motions, filed in propria persona, to augment the appellate record with certain documents that he filed in the trial court. As an exhibit to his second augmentation motion, appellant attached the petition for review in *Allen v. Superior Court* (Sept. 19, 2008, F055579) [nonpub. order], that his trial counsel filed in the Supreme Court in 2008, seeking review of this court's denial of his petition to dismiss the grand jury indictment, and alleging his right to a speedy preliminary hearing was denied and there were irregularities about the composition of the grand jury. The petition for review was denied.

eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) The court's discretion includes striking or dismissing convictions or enhancements pursuant to section 1385. (*People v. Monroe*, *supra*, 85 Cal.App.5th 393, 402; *People v. Rogers* (2025) 108 Cal.App.5th 340, 361.)

As demonstrated in the record of this appeal, the premise of appellant's arguments throughout the section 1172.75 proceedings, and continuing in his letter brief on appeal, is that the trial court could have vacated his guilty plea to first degree premeditated murder and admissions to the special circumstances, dismissed his LWOP sentence, imposed a lesser term, and even set a parole date.

The trial court did not have any discretion to strike or reduce the LWOP sentence as a matter of law at the section 1172.75 resentencing hearing. There are only two possible sentences for a defendant convicted of first degree murder with one or more special circumstance—death or life without the possibility of parole. (*People v. Hardin* (2024) 15 Cal.5th 834, 859.) Murder with a special circumstance " 'carries *a mandatory sentence of LWOP or death* [citation], which are the harshest penalties available under our penal system and are reserved for crimes of the most heinous nature.' " (*People v. Acosta* (2021) 60 Cal.App.5th 769, 780, italics added.) When the death penalty is not imposed, the indeterminate LWOP sentence is the mandatory minimum for first degree murder with one or more special circumstance. (*People v. Ngo* (2023) 89 Cal.App.5th 116, 128.)

Moreover, when a defendant is convicted of or pleads guilty to first degree premeditated murder, and admits or the jury finds true one or more of the special circumstances defined in section 190.2, subdivision (a), the trial court does not have any discretion to strike the special circumstances in order to reduce his mandatory sentence. Section 1385.1 states:

> "Notwithstanding Section 1385 or any other provision of law, a judge shall not strike or dismiss *any special circumstance which is admitted by a plea*

*of guilty or nolo contendere* or is found by a jury or court as provided in Sections 190.1 to 190.5, inclusive."  (Italics added.)

In addition, section 1171, effective January 1, 2025, addresses postconviction proceedings to modify a sentence or a conviction pursuant to an ameliorative statute, including those initiated under section 1172.75.  (§ 1171, subd. (a).)  As relevant herein, section 1171, subdivision (c)(2) states that at such resentencing proceedings, "[t]he court shall consider any pertinent circumstances that have arisen since the prior sentence was imposed and has jurisdiction to modify every aspect of the defendant's sentence, including if it was imposed after a guilty plea," but this provision does not apply "[if] *there is a conflict with a more specific rule established in statute, in which case the more specific statute shall apply* …."  (§ 1171, subd. (c), italics added.)

The trial court in appellant's case was limited to striking elements of the aggregate determinate term:  the prior prison term enhancement, and count 2 and the two-year sentence for felon in possession of a firearm.  The prior prison term enhancement was not "material" to the mandatory LWOP sentence, but imposed as part of appellant's aggregate determinate term.  The indeterminate LWOP sentence was mandatory given appellant's guilty plea to first degree murder and admission of three special circumstances.  (§ 190.2, subd. (a); *People v. Acosta*, *supra*, 60 Cal.App.5th at p. 780.)

Thus, in the absence of an applicable ameliorative statutory provision, the trial court herein had "no authority or discretion to strike a special circumstance finding in order to reduce a defendant's punishment."  (*People v. Garcia* (2022) 83 Cal.App.5th 240, 257.)[19]  The court was expressly prohibited by section 1385.1 from striking or

[19]    The grand jury indictment and probation report stated appellant was born in 1975, so that appellant was approximately 31 years old when he committed the murder in 2006 and thus ineligible for any of the ameliorative resentencing provisions enacted for certain juveniles sentenced to LWOP terms.  (See, e.g., § 1170, subd. (d); *People v. Franklin* (2016) 63 Cal.4th 261, 268; *People v. Sorto* (2024) 104 Cal.App.5th 435, 441–444.)

dismissing the three special circumstances and appellant's LWOP sentence, and this prohibition is again stated in section 1171.

The court properly conducted the resentencing hearing and, as it advised appellant, it gave him "everything I can possibly give you" and "the best that can be given."

## IV.  Appellant's Contentions About the Probation Report

Also in his supplemental letter brief, appellant restates another issue he repeatedly raised throughout the section 1172.75 proceedings:  the trial court should have ordered a probation report prior to conducting the original sentencing hearing on August 2, 2010, the court should have ordered a supplemental probation report before it conducted the section 1172.75 resentencing hearing, the court initially ordered a supplemental report and then erroneously revoked that order, and defense counsel was prejudicially ineffective for failing to request a supplemental report prior to the resentencing hearing.

As explained above, appellant's contentions about the plea agreement and original sentencing hearing are not cognizable in this appeal.  As correctly noted by the trial court during the section 1172.75 proceedings, however, appellant clearly waived preparation of a presentence report and agreed to be sentenced the same day that he entered his plea as part of the negotiated disposition.  Moreover, "[r]eferral of the matter to the probation officer for investigation and report is mandatory when a defendant convicted of a felony is eligible for probation (§ 1203, subd. (b)(1); Cal. Rules of Court, rule 4.411(a)),[20] but discretionary when the defendant is ineligible for probation, except where the amount of a restitution fine must be determined (§ 1203, subd. (g); rule 4.411(b))."  (*People v. Franco* (2014) 232 Cal.App.4th 831, 834.)

Appellant's plea to first degree premeditated murder and admission of three special circumstances carried the mandatory sentence of either death or LWOP.  The negotiated disposition was for LWOP and the parties stipulated to the $5,000 restitution

---

**20**     Further references to rules are to the California Rules of Court.

28.

fine. As a result of the negotiated disposition, the trial court was not mandated to order a presentence report prior to imposing sentence in 2010, and the court did not abuse its discretion in declining to order the report given the parties' stipulations to the terms of the negotiated disposition.

During the section 1172.75 resentencing proceedings in 2024, the trial court was not required to order a supplemental probation report. Rule 4.411(a)(2) states the court shall order "[a] supplemental [probation] report if a significant period of time has passed since the original report was prepared." However, a supplemental probation report is required only under circumstances where a report was required in the first instance, i.e., when the defendant was eligible for probation or a report was necessary to assist the court with other sentencing issues such as the amount of a restitution fine. (*People v. Franco*, *supra*, 232 Cal.App.4th at p. 834, fn. 21.)

The trial court did not have jurisdiction or discretion at the section 1172.75 resentencing hearing to dismiss or strike the three special circumstances that appellant admitted at his plea hearing, and he remained ineligible for probation at the resentencing hearing. While defense counsel moved to reduce or strike the restitution fine, appellant personally interjected that all fines had already been paid. As a result, a supplemental probation report for the resentencing hearing was only discretionary, and the court did not abuse its discretion in ultimately deciding not to order it.

As the trial court explained to appellant, it reduced his sentence to the fullest possible extent by dismissing the entire determinate term, and the reimposition of the LWOP sentence for first degree murder with special circumstances was mandatory: "I have given you everything I can possibly give you. No probation report saying you were a saint would change that. I gave you the best that can be given. No probation report will change that. Requiring Probation to write a report when I'm giving you everything possible is an absolute waste of judicial resources. There is absolutely no point

29.

whatsoever now that the district attorney has agreed to strike everything possible in your case."

## V. Appellant's *Faretta* Contentions

Appellant next contends the trial court erroneously denied his *Faretta* motion to represent himself at the resentencing hearing, and appellate counsel was prejudicially ineffective for filing a *Wende* brief and failing to raise the *Faretta* issue on appeal.

### A. *Faretta*

Under *Faretta*, "[a] trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently." (*People v. Lynch* (2010) 50 Cal.4th 693, 721–722, abrogated on another ground by *People v. McKinnon* (2011) 52 Cal.4th 610, 637; *People v. Valdez* (2004) 32 Cal.4th 73, 97–98.)

After a defendant invokes the right to self-representation, however, a waiver may be found if it reasonably appears that the defendant abandoned the request. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002; *People v. Stanley* (2006) 39 Cal.4th 913, 933; *People v. Tena* (2007) 156 Cal.App.4th 598, 609–610; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1206.)

### B. Analysis

At appellant's first *Marsden* hearing on February 21, 2024, appellant appeared by video conference, and the trial court denied his motion to appoint another attorney. Appellant asked to represent himself. The court continued the *Faretta* hearing so that the *Faretta* advisement and waiver forms could be sent to appellant in prison. However, appellant never again referred to that motion. Indeed, at the June 10, 2024, hearing, the court asked appellant twice if he wanted to represent himself, and appellant instead asked for another *Marsden* hearing. At the second *Marsden* hearing, the court again denied

30.

appellant's motion to appoint another attorney, and he did not request to represent himself.

Appellant abandoned his *Faretta* rights by not pursuing them. He filed numerous motions in propria persona, repeatedly addressed the trial court at hearings, and never again asked to represent himself or raised a *Faretta* motion. The court directly asked him twice whether he wanted to represent himself, and he instead asked for another *Marsden* hearing and appointment of another attorney. (See, e.g., *People v. Tena*, *supra*, 156 Cal.App.4th at pp. 609–610.) Appellate counsel was not prejudicially ineffective for failing to raise this issue on appeal.

## VI.  Denial of *Marsden* Motions; the Public Defender's Potential Conflict

Appellant contends the trial court improperly denied his motions to discharge the deputy public defender at the two *Marsden* hearings held during the section 1172.75 proceedings. Appellant asserts the public defender's office previously declared a conflict because that office was going to represent witnesses at his jury trial and, as a result, he was denied the right to conflict-free counsel when the court failed to remove the deputy public defender as his attorney in the section 1172.75 proceedings. In making these conflict arguments, appellant has not argued that Kelly, the deputy public defender who was appointed to represent him, personally had a conflict, but asserts the entire public defender's office should have been disqualified.

## A.  *Marsden*, Ineffective Assistance, and Conflicts

The law governing a *Marsden* motion "is well settled.  'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.]  A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that

31.

ineffective representation is likely to result [citations].' " (*People v. Fierro* (1991) 1 Cal.4th 173, 204, disapproved on other grounds in *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 206–207; *People v. Memro* (1995) 11 Cal.4th 786, 857.) While the trial court must afford the defendant the opportunity to express specific reasons why he believes he is not being adequately represented, the court is not required to accept defendant's assertions of inadequate representation and may instead credit counsel's explanation. (*People v. Vera* (2004) 122 Cal.App.4th 970, 978–980.) The denial of a *Marsden* motion is reviewed under an abuse of discretion standard. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.)

The trial court has discretion to remove counsel to eliminate potential conflicts. (*Sanchez v. Superior Court* (2024) 106 Cal.App.5th 617, 627.) "To succeed on a claim that the court erred in permitting representation by counsel operating under a conflict of interest, defendant must show the existence of an actual or potential conflict 'that adversely affected counsel's performance.' [Citations.] A conflict of interest may arise if counsel's former client is a prosecution witness in the case against the defendant. [Citations.] This is because counsel's duty not to reveal confidential information acquired during the attorney-client relationship creates conflicting obligations to multiple clients that 'effectively seal[s] [counsel's] lips on crucial matters.' [Citation.] [H]owever, courts have held that no actual or potential conflict of interest arises when the attorney does not possess such confidential information." (*People v. Clark* (2011) 52 Cal.4th 856, 983–984; *People v. Doolin* (2009) 45 Cal.4th 390, 417–418.)

A conflict of interest could exist between a defendant and defense counsel if the attorney has any duty of loyalty to a former client that could potentially hamper defense counsel's performance, or defense counsel might possess confidential information obtained from a former client that could be used against the defendant. (*Cain v. Superior Court* (2025) 110 Cal.App.5th 639, 648.)

32.

The determination of whether an alleged conflict was prejudicial requires examination of the record " 'to determine (i) whether arguments or actions omitted would likely have been made by counsel who did not have a conflict of interest, and (ii) whether there may have been a tactical reason (other than the asserted conflict of interest) that might have caused any such omission.' " (*People v. Doolin*, *supra*, 45 Cal.4th at p. 418.)

**B.  Analysis**

Appellant failed to show the existence of an actual or potential conflict that adversely affected counsel's representation of him during the section 1172.75 proceedings in 2024, aside from vague statements about the jury trial that was never even convened in 2010.  Appellant failed to provide any details about the prior involvement of the public defender's office in his murder case, or which witnesses the public defender's office was going to represent.  As the trial court pointed out, appellant's jury trial was never held because of his plea.  Indeed, Kelly stated she had no conflict to represent appellant.  (*People v. Clark* (2011) 52 Cal.4th 856, 976.)

At the *Marsden* hearings, and throughout the section 1172.75 proceedings, appellant repeatedly complained Kelly failed to engage in appropriate trial tactics, such as demanding a supplemental probation report and using the resentencing hearing to undermine the validity of his pleas, admissions, and the LWOP sentence.  Kelly correctly advised appellant the trial court lacked discretion to strike or dismiss appellant's murder conviction, the special circumstances, and the LWOP sentence, and an attorney is not ineffective for failing to file meritless or frivolous motions.  (*Lucero*, *supra*, 23 Cal.4th at p. 732.)  The court did not abuse its discretion in denying appellant's *Marsden* motions.

**VII.  Denial of Appellant's Augmentation Motions**

Finally, appellant argues this court improperly failed to grant the motions he filed during the pendency of this appeal, in propria persona, to augment the appellate record, and we should not have sent these motions to his appointed appellate attorney.  As will be shown, appellant's arguments are meritless.

## A.  Notice of Appeal

On July 2, 2024, the trial court conducted the section 1172.75 hearing and resentenced appellant to LWOP for first degree premeditated murder with three special circumstances.  On September 5, 2024, appellant filed a notice of appeal and requested a certificate of probable cause to raise issues about both his plea and sentencing on August 2, 2010, and the section 1172.75 recall and resentencing proceedings.  The trial court denied the certificate of probable cause as to any issues regarding his plea and sentence.  On September 25 and October 1, 2024, the record on appeal was filed with this court.

## B.  Appellant's First Motion to Augment

On October 25, 2024, appellant filed, in propria persona, a motion in this court to augment the appellate record with a list of 10 pleadings that he filed in the trial court, also in propria persona, for the section 1172.75 proceedings.

However, eight of these pleadings were already in the clerk's transcript filed in this court.  Appellant's augmentation motion identified two additional documents which were "lodged" in the trial court in August 2024, after the resentencing hearing and were not part of the appellate record.

Also on October 25, 2024, this court advised appellant by letter that once appellate counsel was appointed to represent him, he should share these concerns with counsel.

On December 17, 2024, appellant filed, in propria persona, a motion in this court and asserted he had the right to file his own augmentation motion.  This court advised appellant by order that appellate counsel was about to be appointed, and the documents would be forwarded to counsel after appointment.

## C.  *Wende* Brief

On December 23, 2024, appellate counsel was appointed.

On January 28, 2025, appellate counsel filed the *Wende* brief in this appeal.  On the same day, this court sent a notice to appellant advising that he could file a

supplemental brief raising any arguable issues within 30 days. This court granted appellant's requests for three extensions of time to file his supplemental letter brief.

## D. Appellant's Second Motion to Augment

On June 26, 2025, appellant, acting in propria persona, filed a second motion for this court to augment the appellate record with three documents. The third document he sought to augment was his own copy of the reporter's transcript of the grand jury hearing "related to the Motion to Dismiss the Indictment the Court denied [on] 6-20-2008," which occurred during pre-plea proceedings. He did not attach a copy of this document as an exhibit.

The first and second documents were the two motions that were identified in appellant's first augmentation motion that were not already part of the clerk's transcript. Appellant attached both documents, prepared in propria persona, as supporting exhibits to his second augmentation motion: (1) a "Notice and Motion to Set Aside Stipulation" that was "lodged" in the trial court on August 23, 2024, to set aside the entirety of his plea and sentencing because the victim's family waived restitution, the waiver was invalid, and the invalid waiver resulted in "a void judgment" that had to be set aside; and (2) a "Notice and Motion to Withdraw Plea" that was "lodged" in the trial court on August 26, 2024, asserting victim restitution was mandatory and his plea was involuntary because the victim's family illegally waived restitution.[21]

On June 30, 2025, this court advised appellant by letter that he could not file his own motion to augment since he was represented by appellate counsel, any such motion must come from counsel, and appellant's documents were being sent to appellate counsel.

---

[21] Appellant's declaration in support of his second motion to augment is identical to pages 1 through 9 of his supplemental letter brief filed in this appeal, and revisit alleged errors leading to his plea and sentencing.

## E. Appellate Counsel's Record Omission Letter

On July 2, 2025, appellate counsel sent a record omission letter to the trial court and requested augmentation of the clerk's transcript to include two documents: appellant's "Notice and Motion to Set Aside Stipulation," lodged in the trial court on August 23, 2024; and appellant's "Notice and Motion to Withdraw Plea," lodged in the trial court on August 26, 2024. Counsel did not request augmentation with the grand jury transcripts.

On July 9, 2025, a deputy clerk of the superior court filed a declaration with this court in response to the record omission letter, and stated the trial court directed the deputy clerk to mark the two documents as "received," the trial court did not address these documents, the documents were not filed, and they were not part of the trial court's records and could not be filed in a supplemental clerk's transcript.

On July 22, 2025, appellant filed his supplemental letter brief on appeal. On the same day, appellant filed a motion in this court to substitute another attorney for his appointed appellate counsel because counsel filed a *Wende* brief and failed to augment the grand jury transcripts to the appellate record. This court denied the motion.[22]

## F. Analysis

This court properly declined to grant appellant's augmentation motions filed in propria persona, and correctly forwarded both motions to appellate counsel, because a criminal defendant does not have the right of self-representation on appeal. (*Martinez v. Court of Appeal* (2000) 528 U.S. 152, 159–160, 163; *People v. Mickel* (2016) 2 Cal.5th 181, 206; *People v. Scott* (1998) 64 Cal.App.4th 550, 554.)

---

[22] As previously noted, an attorney is not ineffective for failing to raise meritless objections or motions (*Lucero*, *supra*, 23 Cal.4th at p. 732), and appellate counsel does not commit ineffective assistance by filing a *Wende* brief since "the appellate court … review[s] the entire record to determine whether there is any arguable issue." (*People v. Kelly* (2006) 40 Cal.4th 106, 119.)

As to his first augmentation motion, eight of the 10 pleadings that appellant listed had already been filed in the clerk's transcript on appeal and were before this court.

Appellant's second augmentation motion sought to include the two pleadings listed in his first motion that were not already in the clerk's transcript, along with the grand jury transcripts. Appellate counsel sent a record omission letter to the trial court as to the two "lodged" motions, but the clerk reported both motions were only marked "received," not considered by the trial court, and were not part of the court's records. Appellant belatedly attempted to "lodge" the motions after the court conducted the section 1172.75 hearing and filed the abstract of judgment, and the motions were clearly irrelevant to the resentencing issues.

Appellate counsel properly declined to include the grand jury transcripts in his record omission letter because the indictment was never at issue in this appeal from the resentencing hearing, and appellant's attempted augmentation motion again represented his efforts to use the section 1172.75 proceedings to raise specious and meritless arguments to vacate his plea, admissions, and LWOP sentence.

After independent review of the record, we find no reasonably arguable factual or legal issues exist.

**DISPOSITION**

The judgment is affirmed.